JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ORASURE TECHNOLOGIES, INC.

**DEFENDANTS**

NowDiagnostics, Inc., Jody Berry, and Janean Young,

**(b)** County of Residence of First Listed Plaintiff  Northampton County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Washington County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas K. Johnson, II (#84363), Faegre Drinker Biddle & Reath LLP One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103

Attorneys *(If Known)*
Janean Young: Melanie Fey, Esq., 215-693-5431
Jody Berry:  Gavin P. Lentz, Esq., 215-735-3900
Philip R. Stein, Esq., 305-374-7593

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1331
Brief description of cause: Breach of Contract, Disclosure of Secret or Confidential Ideas or Information

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
11/14/2024

SIGNATURE OF ATTORNEY OF RECORD
*/s/ Thomas K. Johnson, II*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**   Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**   For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**   Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**   The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**   This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.**   Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**   Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**   Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.**   Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**   This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**   Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ORASURE TECHNOLOGIES, INC.,

                Plaintiff,

      v.

NOWDIAGNOSTICS, INC., JODY BERRY
AND JANEAN YOUNG,

                Defendants.

Civil Action No.   2:24-cv-6116

## CIVIL COVER SHEET ATTACHMENT

        To the best of my knowledge, Defendants in the above-captioned action are represented

by the following attorneys:

                **DEFENDANT NOWDIAGNOSTICS, INC.**
                Philip R. Stein, Esq.
                Bilzin Sumberg
                1450 Brickell Avenue, 23rd Floor
                Miami, Florida  33131
                <u>Email</u>: pstein@bilzin.com
                <u>Phone</u>: 305-350-7220

                **DEFENDANT JODY BERRY**
                Gavin P. Lentz, Esq.
                Bochetto Lentz
                1524 Locust Street
                Philadelphia, PA 19102
                <u>Email</u>: glentz@bochettoandlentz.com
                <u>Phone</u>: 215-735-3900

                **DEFENDANT JANEAN YOUNG**
                Melanie Fey, Esq.
                van der Veen, Hartshorn, Levin & Lindheim
                411 Cherry Street
                Norristown, PA  19401
                <u>Email</u>: mfey@mtvlaw.com
                <u>Phone</u>: (215) 486-0123

Dated: November 14, 2024                 FAEGRE DRINKER BIDDLE & REATH LLP

                                         /s/ *Thomas K. Johnson, II*
                                         Thomas K. Johnson, II (#84363)
                                         One Logan Square, Suite 2000
                                         Philadelphia, Pennsylvania 19103
                                         Telephone: 215-988-2700
                                         Email: thomas.johnson@faegredrinker.com

                                         ***Attorneys for Plaintiff OraSure Technologies, Inc.***

DMS_US.367576665.1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _OraSure Technologies, Inc._ _____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?          Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?                Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.   Federal Question Cases:*

☐   1.   Indemnity Contract, Marine Contract, and All Other Contracts         ☐
☐   2.   FELA                                                                 ☐
☐   3.   Jones Act-Personal Injury                                            ☐
☐   4.   Antitrust                                                            ☐
☐   5.   Wage and Hour Class Action/Collective Action                         ☐
☐   6.   Patent                                                               ☐
☐   7.   Copyright/Trademark                                                  ☐
☒   8.   Employment                                                           ☐
☐   9.   Labor-Management Relations
☐   10.  Civil Rights
☐   11.  Habeas Corpus
☐   12.  Securities Cases
☐   13.  Social Security Review Cases
☐   14.  Qui Tam Cases
☐   15.  Cases Seeking Systemic Relief  **\*see certification below\***
☒   16.  All Other Federal Question Cases. *(Please specify):*  _Defend Trade Secrets Act_

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

ORASURE TECHNOLOGIES, INC.,　　　　:　　　　CIVIL ACTION
　　　　　Plaintiff,　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　　　　:
NOWDIAGNOSTICS, INC., JODY BERRY　:
AND JANEAN YOUNG,　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　:　　　NO.　　2:24-cv-6116

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　　　　　　　　　　　　　　　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　　　　　　　　　　　　　　　　　　　　**(X)**

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( )

| | | |
|---|---|---|
| 11/14/2024 | Thomas K. Johnson, II | Plaintiff OraSure Technologies, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-988-2700 | 215-988-2757 | thomas.johnson@faegredrinker.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**


American LegalNet, Inc.
www.FormsWorkFlow.com

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.



American LegalNet, Inc.
www.FormsWorkFlow.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ORASURE TECHNOLOGIES, INC.,

        Plaintiff,

      v.

NOWDIAGNOSTICS, INC., JODY
BERRY AND JANEAN YOUNG,

        Defendants.

Civil Action No.   2:24-cv-6116

Plaintiff OraSure Technologies, Inc. ("OraSure"), for its Complaint against Defendants NOWDiagnostics Inc. ("NowDx"), Janean Young, and Jody Berry, states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     OraSure is a Delaware corporation with its principal place of business in Bethlehem, Pennsylvania.

2.     OraSure is a leader in the development, manufacture, and distribution of rapid point-of-care diagnostic tests, sample collection, and stabilization devices designed to discover and detect critical medical conditions. OraSure has developed rapid tests to detect conditions including HIV, Hepatitis C, COVID-19, and Ebola. OraSure's products are sold globally to clinical laboratories, hospitals, physician's offices, clinics, public health and community-based organizations, research institutions, government agencies, pharmaceutical companies, commercial entities, and direct to consumers.

3.     Defendant NowDx is an Arkansas corporation with its principal place of business in Springdale, Arkansas.

4.      NowDx states that it "develop[s] and manufacture[s] 'Touch to Test' over-the-counter and point of care diagnostic tests that yield results in minutes." NowDx's website contains information for its testing initiatives for conditions including Syphillis, Strep A and COVID-19, among others. NowDx "envision[s] a world where people have greater access to in-home testing with in-home results – in minutes."

5.      Defendant Janean Young is an individual citizen of the Commonwealth of Pennsylvania. Defendant Young is a former OraSure employee who now is employed by Defendant NowDx. Defendant Young worked for OraSure in Pennsylvania.

6.      Defendant Jody Berry is an individual citizen of the Commonwealth of Pennsylvania. Defendant Berry is a former OraSure employee who now is employed by Defendant NowDx. Defendant Berry worked for OraSure in Pennsylvania.

7.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as OraSure has asserted claims arising under the Constitution, laws, or treaties of the United States. The Court may exercise supplemental jurisdiction over OraSure's state law claims pursuant to 28 U.S.C. § 1367.

8.      Personal jurisdiction is proper over persons outside of the Commonwealth by virtue of Pennsylvania's Long-Arm Statute, 42 Pa. Consol. Stat. Ann. § 5322.

9.      Because Defendant Young and Defendant Berry reside in Pennsylvania, and because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Pennsylvania, venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

**ORASURE AND NOWDX ARE COMPETITORS**

10.     OraSure and NowDx are direct competitors in the point-of-care diagnostic testing industry.

11.     Point-of-care diagnostic tests are medical tests performed close to the site of patient care where care or treatment is needed, rather than strictly in a laboratory setting. They are tests that provide rapid results to patients, often in a patient's home or in a clinic.

12.     OraSure and NowDx both research and manufacture lateral flow assay ("LFA") point-of-care diagnostic tests.

13.     LFA tests test for biomarkers in human samples, including, but not limited to, saliva, blood, nasal, and urine.

14.     Typical household examples of LFAs include pregnancy tests and COVID-19 tests.

15.     While LFA tests may take different forms, the following is the description of one common type:  LFA tests are made up of a sample pad, a conjugate pad, a nitrocellulose strip that contains test and control lines, a wicking pad, and a housing shell that holds the test. A sample (i.e., nasal, saliva, blood, or urine) is added directly to the sample pad and is wicked through the testing device to the conjugate pad. The conjugate pad contains nanoparticles with a particular antibody on their surface. The sample mixes with the nanoparticles in the conjugate pad. If the sample contains any analytes that the nanoparticle antibody recognizes, they will bind.

16.     For some tests, the bound nanoparticle-analytes will flow through the testing device across one or more test lines. The test lines consist of immobilized proteins that can

bind to the nanoparticle to generate a signal that is correlated to the presence of the analyte in the sample, thereby giving a positive result on the testing device.

17.    Each component of an LFA is subject to extensive research and development.

18.    Ensuring that antibodies bind with nanoparticles appropriately requires a very particular environment, including specific levels of stabilizing proteins, salt preservatives, proper pHs, amines, etc. Antibodies typically go through a highly controlled purification process to ensure optimal conditions.

19.    If the environment within the test is not scientifically sound, the test may not yield accurate results.

20.    OraSure conducts time- and cost-intensive studies of all aspects of the LFAs it develops, including studies researching the most effective test design, the most effective materials to use for sample pads, conjugate pads, wicking pads, nitrocellulose strip, developer solution, the proper purification procedure for antibodies, the precise antibody combinations to use in each testing device based on the medical condition being tested, the amount of sample to be placed on each test to limit false-positive results, and more.

21.    Antibody combinations for LFA testing are a matter of empirical research. There are hundreds of antibodies that may be screened for a particular LFA test. In order to ensure the antibody in the test binds with the disease contained in the human sample, the antibody combinations must be precise and accurate.

22.    OraSure has undertaken years of research on antibody formulas to determine which antibody combinations most effectively and reliably yield accurate test results.

23.    OraSure also conducts time- and cost-intensive studies into each test's

capabilities, conducting clinical trials for various different strains of disease and testing devices under different conditions.

24.    OraSure works closely in conjunction with the Food and Drug Administration ("FDA"), the Biomedical Advanced Research and Development Authority ("BARDA"), National Institutes of Health ("NIH"), the United States Patent and Trademark Office ("U.S. PTO") and other organizations to satisfy myriad regulatory obligations, obtain funding, and secure patent protection.

25.    NowDx similarly researches and develops LFA testing devices.

26.    Currently, both OraSure and NowDx have directly competitive LFA testing devices on the market.

27.    Both OraSure and NowDx are researching and developing ways to produce new testing devices in the marketplace.

28.    Both OraSure and NowDx manufacture and sell their diagnostic tests around the country and around the world.

## ORASURE'S PROTECTION OF TRADE SECRETS

29.    OraSure has a Research and Development team that is solely focused on researching and developing its testing products and capabilities.

30.    The work of OraSure's R&D team is highly sensitive, confidential, and proprietary. OraSure is consistently researching and developing testing capabilities, designs, and components that are not known to the general public.

31.    OraSure safeguards its R&D information in a secured ██████████ platform that limits access to employees with a need to know OraSure's R&D information.

32.    Each time an OraSure employee logs into an OraSure computer, the employee receives a "Legal Notice," stating:

> This computer, the network connecting it, and the information contained therein are confidential and proprietary to OraSure Technologies. The unauthorized use, duplication, or disclosure of this computer, the network connecting it or its contents, and the attempt to gain unauthorized access hereto constitutes a violation of various penal laws. The use of this computer and the network is monitored. You are representing yourself as an authorized user by continuing with this access procedure.

33.    From there, each individual within OraSure's R&D team has his or her own ▮▮▮▮▮▮▮▮▮▮▮ platform on an internal network where R&D-related work is stored.

34.    The ▮▮▮▮▮▮▮▮ platforms require an individual username and password to access R&D-related work.

35.    Unless an OraSure employee is specifically added as a "permitted user" to an R&D employee's ▮▮▮▮▮▮▮ platform, he or she cannot access that person's R&D-related work.

36.    OraSure employees also undergo extensive confidentiality training as part of their employment.

## BERRY'S AND YOUNG'S EMPLOYMENT WITH ORASURE

37.    Defendant Berry began working at OraSure in 2018 as a Vice President of Research and Development before being promoted to the Chief Scientific Officer of the Diagnostics Unit.

38.    Defendant Young was hired by OraSure on October 5, 2020, as its Director of Research Protein Science.

39.    Throughout her employment with OraSure, Defendant Young reported

directly to Defendant Berry.

40.    Both Young and Berry worked for OraSure in Pennsylvania.

41.    As a condition of employment, Defendant Young and Defendant Berry each executed a Confidentiality Agreement, attached as **Exhibit A and Exhibit B.**

42.    As Chief Scientific Officer, Defendant Berry was aware that Defendant Young, who reported to him, had signed the Confidentiality Agreement and was familiar with its terms.

43.    In her Confidentiality Agreement, Defendant Young agreed that she would not disclose or use for the benefit of herself or anyone else any of OraSure's confidential information at any time during or after her employment with OraSure:

> **Non-disclosure of Secret or Confidential Ideas or Information**
> EMPLOYEE shall not, either during or after the term of his/her employment by ORASURE, disclose to any person or organization other than ORASURE, or its affiliates, or utilize for the benefit or profit of himself/herself or any other person or organization other than ORASURE or its affiliates any proprietary, secret or confidential idea or information developed by EMPLOYEE for ORASURE or its affiliates or obtained while he/she is in ORASURE's employ from ORASURE, its consultants, vendors, customers or affiliates, except as may be authorized by ORASURE. Included in the foregoing, by way of illustration and not limitation, are such items as research projects, findings or reports, business plans, formulae, methods of manufacture, computer software and related documentation, sales, cost, data pricing or other financial data, employee information or lists of current or prospective suppliers or customers.

44.    Defendant Young also agreed that she would not compete with OraSure for one year following the end of her employment:

> **Non-solicitation and Non-competition**
> EMPLOYEE shall not, either during or for one year after the term of his/her employment by ORASURE:
> . . .

own, manage, control work for or provide services to any entity which competes with ORASURE in ORASURE's area of interest as defined about in the United States (the "Protected Business"); provided, however, that this section (i) shall not prevent EMPLOYEE from accepting a position and working with another entity which competes with ORASURE in the Protected Business, if such entity is diversified and operates through separately identifiable and separately run departments, divisions or other business units, and EMPLOYEE is employed in a department, division, or other business unit that is not engaged in the Protected Business and EMPLOYEE does not, directly or indirectly, provide any assistance, services, advice, consultation or information regarding ORASURE's area of interest to the other entity; and (ii) shall not prevent EMPLOYEE from purchasing or owning less than five percent (5%) of the stock or other securities of any entity, provided that such stock or other securities are traded on any national or regional securities exchange or are actively traded in the over-the-counter market and registered under Section 21(g) of the Securities Exchange Act of 1934, as amended.

45.      Defendant Young agreed that certain material was OraSure's property, would be kept solely on OraSure's premises, and would be immediately returned to OraSure following the termination of her employment:

**Material Prepared by EMPLOYEE for ORASURE:**
The following shall be the Property of ORASURE exclusively:
(a)      Any material kept, prepared or received by EMPLOYEE in the course of or in order for him/her to perform his/her duties for ORASURE; and
(b)      Any material containing any secret or confidential idea or information, if such idea or information was
    (i)      developed by EMPLOYEE for ORASURE or any of its affiliates or
    (ii)     obtained while he/she is in ORASURE's employ by EMPLOYEE from ORASURE, its consultants, vendors, customers or affiliates.

Included in the foregoing, by way of illustration and not limitation, are such items as documents, files, computer software, records, correspondence, reports, memorandum, laboratory notebooks, notes, or other papers (including any copy thereof).

**Removal and Return of ORASURE property:**

EMPLOYEE shall not keep elsewhere than on ORASURE premises, nor remove thereof, any property of ORASURE or its affiliates, except and only so long as may be required for the performance of his/her duties for ORASURE. In the event of termination of his/her employment with ORASURE, EMPLOYEE shall immediately return to ORASURE any property of ORASURE or its affiliates in his/her possession, under his/her control or removed by him/her from ORASURE's premises.

46.    In addition to promises made in the Confidentiality Agreement, Defendant Young agreed to abide by OraSure's Handbook. OraSure's Handbook contains a Confidentiality and Protection of Property Rights provision, which states:

> [E]xcept as is necessary for the proper performance of their duties for the Company, its employees are prohibited from either directly or indirectly disclosing to any person or entity outside of the Company, or using for their own personal benefit, any Confidential Information of the Company either during their employment with the Company or following termination of that employment . . . Employees shall, at all times, take all precautions necessary to protect from loss or disclosure any and all documents or other information containing, referring, or relating to such Confidential Information. Any employee's obligation not to divulge Company confidential business information and trade secrets continues after employment ends.

47.    Defendant Berry's Confidentiality Agreement contains terms identical to those outlined above.

48.    Defendant Young and Defendant Berry worked closely together at OraSure to research, develop, and manufacture OraSure's LFA testing devices and components.

49.    Defendant Young and Defendant Berry are also personal friends. Defendant Young has referred to Defendant Berry in written communication as not only her coworker, but her "best friend."

50.    Defendant Young has designated Defendant Berry as her "emergency contact" for personal matters, including for her homeowners' association.

51.    Whatever their personal relationship, Defendant Young and Defendant Berry were intimately involved in all aspects of R&D at OraSure, leading the company's efforts to develop various components of OraSure's LFA testing devices.

52.    Defendant Young and Defendant Berry each had access to many of OraSure's R&D trade secrets. These trade secrets included, but were not limited to, many of OraSure's research into the various components of its testing devices and OraSure's strategic direction for R&D in the marketplace.

53.    ███████████████████████████████████

████████████████████████████████████████

██████████████████████████████

54.    Further, an Interdisciplinary Scientist from the United States Department of Health & Human Services noted that Defendant Young was Orasure's "protein expert" for Ebola testing.

55.    Defendant Young had access to many of the proposals OraSure was making to the United States Patent and Trademark Office for products OraSure hoped to patent in the marketplace.

56.    In addition to her role in R&D, Defendant Young was also involved in OraSure's manufacturing business, ensuring that OraSure's ultimate products aligned with the research and development her team was doing and, as part of that process, she was familiar with the costs associated with production, information which other employees did not have access to and which was kept confidential.

57.    In spite of being engaged to provide works for hire and being told so when

she was hired, at times during her employment with OraSure, Defendant Young expressed her belief that the R&D work product she was developing for OraSure belonged to her personally because she was the one creating it. On multiple occasions, OraSure told Defendant Young that, pursuant to the terms of her Confidentiality Agreement, any work product she developed had been assigned to and was owned by OraSure, and not her personally.

## DEFENDANT YOUNG LEAVES ORASURE FOR A COMPETITOR AND LIES ABOUT IT.

58. On February 13, 2023, Defendant Berry's employment with OraSure ended.

59. Perhaps mindful of his covenant not to compete, on March 14, 2024, more than a year after he left OraSure, Defendant Berry became the Chief Scientific Officer at Defendant NowDx, a direct competitor of OraSure.

60. Upon information and belief, among other things, Defendant Berry's research at NowDx includes researching potential LFA tests just like the ones that OraSure produces and his research includes a potential test for streptococcus.

61. Thereafter, on May 21, 2024, Defendant Young requested and received a copy of her Confidentiality Agreement from OraSure. Presumably, Defendant Young examined the Agreement at this time and was fully aware of her obligations to OraSure.

62. Following his departure from OraSure, Defendant Berry and Defendant Young continued to be good friends.

63. Defendant Young continued to send Defendant Berry emails regarding research, presentations, and speaking opportunities in their shared field.

64.     When Defendant Young would receive performance feedback in her role at OraSure, she would often forward that feedback and related materials to Defendant Berry.

65.     Upon information and belief, Defendant Berry, acting in his role as a high level NowDx manager, ultimately solicited Defendant Young to end her employment with OraSure and accept employment with NowDx.

66.     Unbeknownst to OraSure at the time, Defendant Young accepted employment with NowDx on Thursday, August 29, 2024.

67.     The next day, Friday, August 30, 2024, the first day of the Labor Day holiday weekend, Defendant Young told her supervisor, Rafal Iwasiow, Vice President, Science, Innovation & Technology, that she believed she might need a break and some time off from OraSure.

68.     Mr. Iwasiow, unaware that Defendant Young had already accepted employment with a competitor, told Defendant Young to take some time to think about it and assured her that a leave of absence would be an option.

69.     The next day, Saturday, August 31, 2024, Defendant Young sent a resignation letter to OraSure's Human Resources Manager, Allie Taylor. Defendant Young then attempted to recall the email.

70.     On Sunday, September 1, 2024, Defendant Young re-sent the resignation letter to Ms. Taylor. The resignation letter did not state that Defendant Young had accepted a new role, or that it was with a competitor.

71.     Defendant Young requested that her last day of employment with OraSure to be September 23, 2024 – three full weeks after resigning, notwithstanding having accepted

employment with a competitor.  OraSure agreed to allow Defendant Young to remain as an employee until September 23, 2024, but would not have done so had it been aware that Defendant Young was going to a competitor.

72.    For three weeks after her resignation, between August 30, 2024 and September 23, 2024, Defendant Young continued to work at OraSure and to take advantage of her high level access to OraSure's R&D secrets, attending meetings, and continuing to learn more of OraSure's confidential and proprietary information.

73.    On Tuesday, September 3, 2024, Defendant Young attempted to speak to Ms. Taylor in person, but Ms. Taylor was not present. Instead, Defendant Young spoke to Amy Steigerwalt, Senior Vice President, Human Resources.

74.    Ms. Steigerwalt spoke with Defendant Young regarding her decision to resign. Ms. Steigerwalt asked Defendant Young if she had obtained another role with any other company, and Defendant Young lied and said that she had not.

75.    When asked by Ms. Steigerwalt what she intended to do after her resignation, Defendant Young said that she would take time off to travel, and that she needed downtime and was not planning to work.

76.    On September 6, 2024, Defendant Young sent an email to her R&D team, announcing her departure and stating: "I would like to share with you that I have made the decision to take a much needed break from the daily grind." Here, too, Defendant Young lied and made no mention of obtaining a new job at a competitor.

77.    On September 17, 2024, Defendant Young spoke with Ms. Steigerwalt again regarding her last days of employment and the transitioning of her job duties at OraSure.

Defendant Young again made no reference to her new job at NowDx, continued to represent that she was taking time off after her role at OraSure ended, and, when his name came up in conversation, denied having been in contact with Defendant Berry for several months, notwithstanding regularly communicating with him.

78.    On September 23, 2024, Defendant Young's last day of employment with OraSure, Ms. Taylor met with Defendant Young and reminded her of her obligations to OraSure as set forth in her Confidentiality Agreement, including her obligations not to compete with OraSure and to maintain the confidentiality of all OraSure material.

79.    These obligations – which Defendant Young has just reviewed herself in May 2024 after she requested a copy of her Confidentiality Agreement – were spelled out in a letter dated September 23, 2024, that was given to Defendant Young. Defendant Young stated that she understood and intended to abide by all obligations.

80.    According to the NowDx offer letter that she signed, Defendant Young's first day of employment with NowDx was September 23, 2024 – a day she was still employed by OraSure.

## DEFENDANT YOUNG TAKES ORASURE'S TRADE SECRET INFORMATION TO NOWDX AND SHARES IT WITH JODY BERRY

81.    Defendant Young's repeated lies about the fact that she had not obtained another job, let alone one at a competitor, NowDx, were designed to allow her to give her more time to steal OraSure's trade secrets and take them with her before her last day of employment.

82.    Even prior to her formal August 31, 2024, resignation, without OraSure's

permission, Defendant Young engaged in a pattern of forwarding OraSure's trade secret information both to herself and to her former colleague, Defendant Berry.

83.    By way of example, on October 25, 2023, Defendant Young sent an email to Defendant Berry, who had departed from OraSure eight months prior, containing



87.    This information is the culmination of years of investment by OraSure, is highly confidential, and has independent economic value by virtue of not being generally known in the industry.

88.    This information could enable any competitor – including NowDx – to better design its own competing products by ensuring more accurate test results.

**OraSure's** 

89.    In addition to OraSure's ███████, Defendant Young took OraSure's confidential and trade secret information pertaining to OraSure's ███████████ ███████████.



████████████████████████████████████████████████

███████████████████████

91.    ███████████████████████████████████

██████████████████████████████████

92.    ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

93.    ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

94.    ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

95.    ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████

96.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

97.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

98.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

99.    ████████████████████████████████████

██████████████████████████████████████████

100.    ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████

101.  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

**OraSure's** ██████████████████████████████

102.  In addition ████████, OraSure's R&D team has also invested significant amounts of time, money and other research & development resources to develop an ██████████████████████████████████████.

103.  OraSure has invested nearly four years and millions of dollars in this initiative.

104.  Currently, OraSure is set to embark on clinical studies to further study the test components it is developing.

105.  On July 2, 2024, Defendant Young forwarded to a personal email address an email circulated amongst a small group of R&D professionals working on ██████████ ██████████████.

106.  The email contains a Microsoft Excel spreadsheet attachment detailing OraSure's highly proprietary and trade secret test results over nine different tabs of data.

107.  ███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

108.    The information contained in these documents is the culmination of years of investment by OraSure, is highly confidential, and has independent economic value.

109.    The data is a blueprint of OraSure's reagent formulation that would permit any competitor – including NowDx – to easily duplicate OraSure's efforts.

**OraSure's** ████████████████████████████

110.    OraSure is similarly working to develop a test ██████████████████

111.    ████████████████████████████████████████████

████████████████████████████████████

112.    On May 21, 2024, four hours after receiving a copy of her Confidentiality Agreement from OraSure, Defendant Young emailed to herself ██████████████████ ████████████████████████████████.

113.    The Proposal includes a detailed description of OraSure's proposed testing device, a technical description of its use, a detailed production budget setting forth the costs for test development, and a detailed schedule of future development plans, feasibility studies, and verification procedures.

114.    On September 11, 2024, following her resignation from OraSure, Defendant Young emailed to herself ████████████████████████████████████ ███.

115.    The submission again details every aspect of OraSure's ████████████████ ████████████████████████████████████████████ ██████████████.

116.    The information contained in these documents is the culmination of over ██ and ████ dollars of investment by OraSure, is highly confidential, and has independent economic value.

117.    The information is not generally available to the public and its secrecy is strictly maintained by OraSure.

118.    This information could enable any competitor – including NowDx – to use OraSure's proprietary information in the development of its own competing products.

**OraSure's ██████████████████**

119.    Defendant Young was OraSure's protein "expert" when it came ████ ██.

120.    On September 20, 2024, Defendant Young sent an email from her OraSure email address to her personal email address. █████████████████ ██████████████████████████████████ ████████████.

121.    The document provides a detailed description of OraSure's ████ ██████████████████████████████████ ██████████████████████████████████ ███████████████████████.

122.    The information contained in this document is the culmination of ████ and over ██████ dollars of investment by OraSure, is highly confidential, and has independent economic value.

123.    The information is not generally available to the public and its secrecy is

strictly maintained by OraSure.

124.    This information could enable any competitor – including NowDx – to use OraSure's proprietary information in the development of its own competing products.

**OraSure's** ████████████████████

125.    Finally, OraSure was involved in ████████████████████████████.

126.    On September 13, 2024, Defendant Young sent an email from her OraSure email address to her personal email address containing ████████████████████

████████████████████████████████████████████████

████████████████████████████████████

127.    The application sets forth, in great detail, OraSure's proprietary methods, products, and antibody sequences used in the test.

128.    The information contained in this document is the culmination of many years and substantial funding by OraSure, is highly confidential, and has independent economic value.

129.    The information is not generally available to the public and its secrecy is strictly maintained by OraSure.

130.    This information could enable any competitor – including NowDx – to use OraSure's proprietary information in the development of its own competing products.

131.    Upon information and belief, Defendant Young has used all of the information she has forwarded to her own personal email address to enhance NowDx's testing capabilities.

132.    Upon information and belief, Defendant Young has shared all of the

information identified above with Defendant Berry at NowDx for purposes of directing NowDx's R&D efforts.

133.    Upon information and belief, NowDx is benefiting from years of R&D work OraSure has completed, giving NowDx an unfair advantage in the marketplace.

134.    On October 4, 2024, OraSure sent cease and desist letters to Defendants NowDx, Berry, and Young, demanding that they cease all activity described herein.

135.    On October 9, October 11, and October 18, 2024, counsel for NowDx, Berry, and Young responded, denying that the conduct set forth above constituted a violation of any applicable law.

136.    Left with no other choice, OraSure filed this Complaint.

## COUNT I – Violation of the Federal Defend Trade Secrets Act
### (All Defendants)

137.    OraSure restates and realleges all previous paragraphs.

138.    The emails identified above that Defendant Young sent both to herself and to Defendant Berry contain OraSure's trade secrets under the Federal Defend Trade Secrets Act. The emails contain highly proprietary information regarding OraSure's development of several different tests, including the schematics for the tests, the antigens and proteins used in the tests themselves, and proprietary data regarding sample sizes to use in test administration.

139.    The data contained in the emails Defendant Young misappropriated is the result of years of research and development and millions of dollars invested by OraSure.

140.    OraSure took reasonable measures to maintain the confidentiality of this

information by, among other things, training its employees on confidentiality and maintaining the information on password-protected platforms and employee training.

141.    The information has independent economic value that would benefit its competitors, like NowDx, in the marketplace. Information regarding OraSure's proprietary test design, the chemical make-up of the components used in its tests, and the results of studies conducted by OraSure on test administration would permit any competitor, including NowDx, to replicate OraSure's development efforts with minimal additional investment.

142.    OraSure's trade secret information is related to products that are used in interstate and foreign commerce. OraSure's testing devices are sold globally.

143.    Notwithstanding these protective measures in place, Defendants have misappropriated OraSure's trade secret information. Defendant Young has misappropriated OraSure's trade secret information by taking it with her in her personal email box, accessible via her personal computing devices, to her competitive employment with NowDx. Defendant Young has also misappropriated OraSure's trade secret information by emailing it to members of the public outside of OraSure, including Defendant Berry.

144.    Defendant Berry and Defendant NowDx received OraSure's trade secret information directly from Defendant Young. Defendant Berry and Defendant NowDx knew that the information constituted OraSure's trade secret information and made no effort to inform OraSure of their possession of it or otherwise destroy the information they possessed. Instead, Defendant Berry and Defendant NowDx continued to use and benefit from the trade secret information in their possession.

145.    Defendants' misappropriation of OraSure's trade secrets was knowing, deliberate, and willful.

146.    As a direct and proximate cause of Defendants' wrongful conduct alleged above, OraSure has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to attorney fees and costs related to this litigation, loss of goodwill, and lost business and profits.

147.    In addition, OraSure has no adequate remedy at law for Defendants' misappropriation. As a direct and proximate result of this wrongful conduct, OraSure has suffered irreparable harm and will continue to suffer irreparable harm unless such unlawful conduct is enjoined by this Court.  If not enjoined, Defendants will continue to cause irreparable harm to the rights of OraSure and to OraSure's business, reputation, and goodwill.

## <u>COUNT II – Violation of the Pennsylvania Uniform Trade Secrets Act</u><br><u>(All Defendants)</u>

148.    OraSure restates and realleges all previous paragraphs.

149.    The emails identified above that Defendant Young sent both to herself and to Defendant Berry contain OraSure's trade secrets under the Pennsylvania Uniform Trade Secrets Act. The emails contain highly proprietary information regarding OraSure's development of several different tests, including the schematics for the tests, the antigens and proteins used in the tests themselves, and proprietary data regarding sample sizes to use in test administration.

150.    The data contained in the emails Defendant Young misappropriated is the

result of years of research and development and millions of dollars invested by OraSure.

151.    OraSure took reasonable measures to maintain the confidentiality of this information by, among other things, training its employees on confidentiality and maintaining the information on password-protected platforms and employee training.

152.    The information has independent economic value that would benefit its competitors, like NowDx, in the marketplace. Information regarding OraSure's proprietary test design, the chemical make-up of the components used in its tests, and the results of studies conducted by OraSure on test administration would permit any competitor, including NowDx, to replicate OraSure's development efforts with minimal additional investment.

153.    OraSure's trade secret information is related to products that are used in interstate and foreign commerce. OraSure's testing devices are sold globally.

154.    Notwithstanding these protective measures in place, Defendants have misappropriated OraSure's trade secret information. Defendant Young has misappropriated OraSure's trade secret information by taking it with her in her personal email box, accessible via her personal computing devices, to her competitive employment with NowDx. Defendant Young has also misappropriated OraSure's trade secret information by emailing it to members of the public outside of OraSure, including Defendant Berry.

155.    Defendant Berry and Defendant NowDx received OraSure's trade secret information directly from Defendant Young. Defendant Berry and Defendant NowDx knew that the information constituted OraSure's trade secret information and made no effort to inform OraSure of their possession of it or otherwise destroy the information they

possessed. Instead, Defendant Berry and Defendant NowDx continued to use and benefit from the trade secret information in their possession.

156.    Defendants' misappropriation of OraSure's trade secrets was knowing, deliberate, and willful.

157.    As a direct and proximate cause of Defendants' wrongful conduct alleged above, OraSure has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to attorney fees and costs related to this litigation, loss of goodwill, and lost business and profits.

158.    In addition, OraSure has no adequate remedy at law for Defendants' misappropriation. As a direct and proximate result of this wrongful conduct, OraSure has suffered irreparable harm and will continue to suffer irreparable harm unless such unlawful conduct is enjoined by this Court.  If not enjoined, Defendants will continue to cause irreparable harm to the rights of OraSure and to OraSure's business, reputation, and goodwill.

### COUNT III – Breach of Contract
### (Defendant Young)

159.    OraSure restates and realleges all previous paragraphs, as if fully set forth herein.

160.    Defendant Young's Confidentiality Agreement is a valid and enforceable contract.

161.    Defendant Young breached the Confidentiality Agreement by accepting employment with NowDx, a director competitor of OraSure, before her employment with

OraSure ended.

162.    Defendant Young also breached the Confidentiality Agreement by misappropriating OraSure's confidential and trade secret information, including, but not limited to, by sending copies of OraSure's confidential and trade secret information to non-OraSure employees and to her personal email address as described above.

163.    As a direct and proximate cause of Defendant Young's wrongful conduct alleged above, OraSure has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to attorney fees and costs related to this litigation, loss of goodwill, and lost business and profits.

164.    In addition, OraSure has no adequate remedy at law for Defendant Young's breach of contract. As a direct and proximate result of this wrongful conduct, OraSure has suffered irreparable harm and will continue to suffer irreparable harm unless such unlawful conduct is enjoined by this Court.  If not enjoined, Defendant Young will continue to cause irreparable harm to the rights of OraSure and to OraSure's business, reputation, and goodwill.

### <u>COUNT IV – Breach of Duty of Loyalty</u><br><u>(Defendant Young)</u>

165.    OraSure restates and realleges all previous paragraphs.

166.    As an employee of OraSure, Defendant Young owed OraSure a duty of loyalty.

167.    "An agent's specific duties of loyalty include a duty to refrain from competing with the principal and from taking action on behalf of, or otherwise assisting,

the principal's competitors throughout the duration of the agency relationship, as well as a duty not to use proprietary or confidential information of the principal for the agent's own purpose of those of a third party." *Solid Wood Cabinet Co. v. Partners Home Supply*, 2015 WL 1208182 (E.D. Pa. Mar. 13, 2015) (citing *Snythes, Inc. v. Emerge Medical, Inc.*, 25 F.Supp.3d 617, 667 (E.D. Pa. 2014)).

168.   Defendant Young intentionally failed to act in good faith and solely for OraSure's benefit while she was employed by OraSure when she intentionally misappropriated OraSure's confidential and trade secret information and shared it with OraSure's competitors.

169.   Defendant Young further failed to act in good faith and solely for OraSure's benefit while she was employed when she accepted employment with NowDx – a direct competitor of OraSure – while still employed by OraSure, working for both entities at the same time and engaging in blatant acts of dishonesty to conceal her actions.

170.   As a result of Defendant Young's actions, OraSure has suffered damage in an unknown amount. OraSure is irreparably damaged by the disclosure of its trade secrets to its competitors.

171.   Defendant Young's breach of her duty of loyalty to OraSure directly caused OraSure's injuries.

172.   As a direct and proximate cause of Defendant Young's wrongful conduct alleged above, OraSure has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to attorney fees and costs related to this litigation, loss of goodwill, and lost business and profits.

173.    In addition, OraSure has no adequate remedy at law for Defendant Young's breach of her duty of loyalty.  As a direct and proximate result of this wrongful conduct, OraSure has suffered irreparable harm and will continue to suffer irreparable harm unless such unlawful conduct is enjoined by this Court.  If not enjoined, Defendant Young will continue to cause irreparable harm to the rights of OraSure and to OraSure's business, reputation, and goodwill.

**COUNT V – Unfair Competition**
**(Defendant NowDx)**

174.    OraSure restates and realleges all previous paragraphs.

175.    OraSure and NowDx are direct competitors, both providing similar goods and services in the marketplace.

176.    Defendant Berry and Defendant Young, both former OraSure employees who now work for NowDx, are in possession of OraSure's misappropriated trade secret information.

177.    Upon information and belief, Defendant Berry and Defendant Young are using OraSure's trade secret information, on behalf of Defendant NowDx, to compete against OraSure in the marketplace.

178.    NowDx is benefiting in the marketplace by using OraSure's competitive business information to gain a competitive advantage over OraSure.

179.    Defendant NowDx's use of OraSure's trade secret information is causing OraSure irreparable harm.

180.    As a direct and proximate cause of Defendant NowDx's wrongful conduct

alleged above, OraSure has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to attorney fees and costs related to this litigation, loss of goodwill, and lost business and profits.

181.    In addition, OraSure has no adequate remedy at law for Defendant NowDx's unfair competition. As a direct and proximate result of this wrongful conduct, OraSure has suffered irreparable harm and will continue to suffer irreparable harm unless such unlawful conduct is enjoined by this Court.  If not enjoined, Defendants will continue to cause irreparable harm to the rights of OraSure and to OraSure's business, reputation, and goodwill.

## COUNT VI – Tortious Interference With Contractual Relations
## (Defendants Berry and NowDx)

182.    OraSure restates and realleges all previous paragraphs.

183.    Defendant Young's Confidentiality Agreement is a valid and enforceable contract.

184.    Defendant Berry is the Chief Scientific Officer for NowDx and as such is part of the highest level of executive leadership at NowDx.

185.    Defendant Berry and NowDx knew or should have known of Defendant Young's contractual obligations to OraSure, including her obligations not to compete with OraSure and her obligations to maintain the confidentiality of OraSure's proprietary and trade secret information.

186.    Indeed, Defendant Berry signed an identical Confidentiality Agreement to the one that Defendant Young signed and, because he was Defendant Young's supervisor

at OraSure, he knew that she had signed the Confidentiality Agreement.

187.    Further, had NowDx exercised ordinary care, it would have known from hiring Defendants Young and Berry that they had signed the Confidentiality Agreements.

188.    Defendant Berry and NowDx intentionally induced Defendant Young to breach her contractual obligations to OraSure by soliciting her to end her employment with OraSure and accept competitive employment with NowDx.

189.    Defendant Berry, on behalf of NowDx, further intentionally induced Defendant Young to breach her contractual obligations to OraSure by encouraging her to share OraSure's confidential and trade secret information with him.

190.    Defendants Berry and NowDx were motivated by a desire to grow NowDx's market share while diminishing OraSure's in the same competitive markets.

191.    Defendants Berry and NowDx had no justification for interfering with the contractual relationship between Defendant Young and Orasure.

192.    As a direct and proximate cause of Defendants Berry and NowDx's wrongful conduct alleged above, OraSure has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to attorney fees and costs related to this litigation, loss of goodwill, and lost business and profits.  In addition, OraSure has no adequate remedy at law for Defendants Berry and NowDx's tortious interference.  As a direct and proximate result of this wrongful conduct, OraSure has suffered irreparable harm and will continue to suffer irreparable harm unless such unlawful conduct is enjoined by this Court.  If not enjoined, Defendants Berry, Young and NowDx will continue to cause irreparable harm to the rights of OraSure and to OraSure's business, reputation, and

goodwill.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff OraSure Technologies, Inc. demands judgment against Defendants NOWDiagnostics, Inc., Jody Berry, and Janean Young, and respectfully requests that the Court:

1.    Preliminarily and permanently enjoin Defendants and all acting in concert with them from directly or indirectly using, disclosing, or divulging to any person or entity any trade secrets of OraSure, whether for their benefit or the benefit of any other person, or entity;

2.    Preliminarily and permanently enjoin all Defendants from any further unlawful conduct in violation of their contractual, statutory, common law, and/or fiduciary obligations and duties to OraSure, including but not limited to enforcement of Defendant Young's and other current and former OraSure employees' restrictive covenants, and any use, possession or disclosure of OraSure's confidential and proprietary information or trade secrets;

3.    Preliminarily and permanently enjoin Defendants from interfering with any of OraSure's employees' or former employees' contractual obligations to OraSure, including, but not limited to interfering with their obligations not to hire or attempt to hire any of OraSure's employees, agents, representatives or sub-representatives, or to attempt to induce or influence any of OraSure's employees, agents, representatives or sub-representatives to terminate their employment relationship with OraSure;

4.      Enter judgment against Defendants for all damages proximately caused by its wrongful actions, for all amounts by which it may have been unjustly enriched, and for prejudgment interest;

5.      Award OraSure exemplary damages for Defendants' willful and malicious misappropriation of trade secrets pursuant to 18 U.S.C. § 1836(b)(3);

6.      Award OraSure its costs, disbursements, and attorney fees pursuant to 18 U.S.C. § 1836(b)(3) and other law; and

7.      Order all other relief that the Court deems proper and just under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

OraSure hereby demands a trial before a jury on all issues so triable.

Dated: November 14, 2024          FAEGRE DRINKER BIDDLE & REATH LLP

/s/ Thomas K. Johnson
Thomas K. Johnson, II (#84363)
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Telephone: 215-988-2700
Email: thomas.johnson@faegredrinker.com

***Attorneys for Plaintiff OraSure Technologies, Inc.***

DMS_US.366831631.2

# EXHIBIT A

# CONFIDENTIALITY AGREEMENT

AGREEMENT between ORASURE Technologies, Inc. (ORASURE) and JANEAN YOUNG ("EMPLOYEE").

In consideration of the employment or continued employment of EMPLOYEE by ORASURE and of salary, wages or other compensation to be paid by ORASURE to EMPLOYEE, it is hereby agreed as follows:

**ORASURE's Area of Interest:**

As used in this agreement, the term "ORASURE's area of interest" shall mean its operations or any field of research, investigative or business in which it or any of its affiliates is actually engaged or is preparing or planning to engage during EMPLOYEE'S employment by ORASURE. Any EMPLOYEE who is in doubt as to the scope of the operations, field of research, investigative or business of ORASURE or its affiliates should consult with the President of ORASURE. ORASURE's present area of interest includes but is not limited to consumer products, clinical diagnostic products, medical devices, and other healthcare products.

**Non-disclosure of Secret or Confidential Ideas or Information:**

EMPLOYEE shall not, either during or after the term of his/her employment by ORASURE, disclose to any person or organization other than ORASURE, or its affiliates, or utilize for the benefit or profit of himself/herself or any other person or organization other than ORASURE or its affiliates any proprietary, secret or confidential idea or information developed by EMPLOYEE for ORASURE or its affiliates or obtained while he/she is in ORASURE's employ from ORASURE, its consultants, vendors, customers or affiliates, except as may be authorized by ORASURE. Included in the foregoing, by way of illustration and not limitation, are such items as research projects, findings or reports, business plans, formulae, methods of manufacture, computer software and related documentation, sales, cost, data pricing or other financial data, employee information or lists of current or prospective suppliers or customers.

**Non-solicitation and Non-Competition:**

EMPLOYEE shall not, either during or for one year after the term of his/her employment by ORASURE,

(a) recruit, solicit, hire, or assist or induce another person or company in recruiting, soliciting or hiring, any executive or employee of ORASURE;

(b) induce or solicit, or assist or induce another person or company in inducing or soliciting, any current or prospective customer, client or supplier/vendor of ORASURE to cease being a customer, client or supplier/vendor of ORASURE, or divert or assist or induce another person or company to divert, ORASURE business away from any customer, client or supplier/vendor of ORASURE; or

(c) own, manage, control, work for or provide services to any entity which competes with ORASURE in ORASURE's area of interest as defined above in the United States (the "Protected Business"); provided, however, that this section (i) shall not prevent EMPLOYEE from accepting a position and working with another entity which competes with ORASURE in the Protected Business, if such entity is diversified and operates through separately identifiable and separately run departments, divisions or other business units, and EMPLOYEE is employed in a

department, division or other business unit that is not engaged in the Protected Business and EMPLOYEE does not, directly or indirectly, provide any assistance, services, advice, consultation or information regarding ORASURE's area of interest to the other entity; and (ii) shall not prevent EMPLOYEE from purchasing or owning less than five percent (5%) of the stock or other securities of any entity, provided that such stock or other securities are traded on any national or regional securities exchange or are actively traded in the over-the-counter market and registered under Section 21(g) of the Securities Exchange Act of 1934, as amended..

**Publishing:**
Except as may be approved by ORASURE, EMPLOYEE shall not

(a)   During the term of his/her employment by ORASURE, submit for publication or publish any
idea or information relating to ORASURE's area of interest; and

(b)   After the term of his/her employment by ORASURE, submit for publication or publish any idea
or information relating to ORASURE's area of interest if such idea or information was developed by EMPLOYEE for ORASURE, or obtained by EMPLOYEE from ORASURE, its consultants, vendors, customers or affiliates, while EMPLOYEE was in ORASURE's employ.

**Outside Employment:**
EMPLOYEE shall not enter or carry on during the term of his/her employment by ORASURE any outside employment, business or other activity for which he/she receives compensation which relates to his/her duties at ORASURE, to his/her profession or to ORASURE's area of interest, which may constitute a conflict of interest, except as may be authorized by ORASURE.

**Material Prepared by EMPLOYEE for ORASURE:**
The following shall be the Property of ORASURE exclusively:

(a)   Any material kept, prepared or received by EMPLOYEE in the course of or **in** order for him/her to perform his/her duties for ORASURE; and

(b)   Any material containing any secret or confidential idea or information, if such idea or information was

(i)    developed by EMPLOYEE for ORASURE or any of its affiliates or

(ii)   obtained while he/she is in ORASURE's employ by EMPLOYEE from ORASURE, its consultants, vendors, customers or affiliates.

Included in the foregoing, by way of illustration and not limitation, are such items as documents, files, computer software, records, correspondence, reports, memorandum, laboratory notebooks, notes, or other papers (including any copy thereof).

**Removal and Return of ORASURE property:**
EMPLOYEE shall not keep elsewhere than on ORASURE premises, nor remove thereof, any property of ORASURE or its affiliates, except and only so long as may be required for the performance of his/her duties for ORASURE. In the event of termination of his/her employment with ORASURE, EMPLOYEE shall immediately return to ORASURE any property of

ORASURE or its affiliates in his/her possession, under his/her control or removed by him/her from ORASURE's premises.

**Disclosure of Inventions:**

EMPLOYEE shall immediately disclose to ORASURE or its designee and keep adequate records on any invention, discovery, improvement, process product or device, which relates to ORASURE's area of interest and which is conceived, discovered or made by him/her, either solely or jointly with others, during the term of his/her employment by ORASURE. EMPLOYEE shall also immediately disclose to ORASURE or its designee and keep adequate records on any inventions, discovery, improvement, process, product or device, conceived, discovered or made by him/her, either solely or jointly with others, during or after the term of his/her employment by ORASURE, if such inventions, discovery, improvement, process, product or device is based on secret or confidential ideas of information developed by EMPLOYEE for ORASURE or its affiliates or obtained by EMPLOYEE while he/she is in ORASURE's employ from ORASURE, its consultants or affiliates.

**Ownership of Inventions:**

The following shall be the property of ORASURE or its designee exclusively:

(a)     Any invention, discovery, improvement, process, product or device, relating to ORASURE's area of interest, conceived, discovered or made by EMPLOYEE solely or jointly with others during the term of his/her employment by ORASURE;

(b)     Any invention, discovery, copyright or other proprietary intellectual property right, improvement, process, product or device, conceived, discovered or made by EMPLOYEE solely or jointly with others during or after the term of his/her employment by ORASURE, if such invention, discovery, improvement, process, product or device is based on secret or confidential ideas or information developed by EMPLOYEE for ORASURE or its affiliates or obtained by EMPLOYEE while he/she is in ORASURE's employ from ORASURE, its consultants or affiliates; and

(c)     Any patent, patent application or record relating to any such invention, discovery, improvement, process, product or device.

**Secret or Confidential Information of Prior Employers:**

EMPLOYEE shall not disclose to ORASURE or its affiliates any secret or confidential idea or information of a prior employer, except and only as may be authorized by such employer. In case of doubt with respect to his/her obligation towards a prior employer, EMPLOYEE shall consult with the Counsel of ORASURE.

**EMPLOYEE's Own Inventions:**

EMPLOYEE has listed on Schedule A of this agreement all patentable inventions which EMPLOYEE claims are his/her property and which were conceived, discovered or made by him/her solely or jointly or with others prior to his/her employment by ORASURE or its affiliates.  The absence of any such listing is a specific representation and agreement by EMPLOYEE that there is no such invention.

**Obtaining and Enforcement of Patents and Assignment of Rights:**

EMPLOYEE shall upon the request of ORASURE either during or after the term of his/her employment by ORASURE do the following:

(a)  Make all lawful oaths and declarations and execute and deliver to ORASURE or its designee any documents which are in the opinion of ORASURE or its counsel necessary to secure or assign to ORASURE or its designee full patent protection in any country or any invention, discovery, improvement, process, product or device which is the property of ORASURE under this agreement; and

(b)  Assist ORASURE or its designee, by testifying or otherwise, in the obtaining or enforcement of any patent relating to any such invention, discovery, improvement, process, product or service.

Necessary expenses in connection with the foregoing, and a fee not to exceed $1OO per day if EMPLOYEE is no longer employed by ORASURE shall be borne by ORASURE.

Any obligation of EMPLOYEE to assign rights to ORASURE or its designee under this agreement shall not apply to an invention whether or not within ORASURE's area of interest for which no equipment, supplies, facility or trade secret information of ORASURE was used and which was developed entirely on the EMPLOYEE's own time, unless (a) the invention relates (i) directly to the business of ORASURE or its affiliates, or (ii) to the actual or demonstrably anticipated research or development of ORASURE or its affiliates, or (b) the invention results from any work performed by the EMPLOYEE for ORASURE.

**Agreements with Prior Employers:**
EMPLOYEE shall use his/her best efforts to obtain and furnish ORASURE with copies of all written agreements entered into by him/her with prior employers either relating to inventions or secret or confidential ideas or information, or in any way restricting or otherwise relating to EMPLOYEE's employment by ORASURE, unless EMPLOYEE is under obligation not to disclose the contents of any such agreement. EMPLOYEE has listed on Schedule B of this agreement all prior employers with whom such agreements have been made.

**Miscellaneous Provisions:**

(a)  Any failure on the part of ORASURE to insist upon the performance of this agreement, or any part thereof, shall not constitute a waiver of any right under this agreement.

(b)  In the event any provision, or any portion of any provision, of this agreement should be declared invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or portion thereof shall be considered separate and apart from the remainder of this agreement, which shall remain in full force and effect.

(c)  This agreement shall be construed according to the laws of the Commonwealth of Pennsylvania, without regards to Pennsylvania conflicts of laws principles; any dispute between EMPLOYEE and ORASURE may be brought only in the state or federal courts in Pennsylvania and the parties hereby consent to the exclusive jurisdiction of those courts.

(d)  All captions herein are for convenience only, and shall not be interpreted as having any meaning or significance.

(e)  This agreement may not be assigned by EMPLOYEE. Subject to the foregoing, this agreement shall be binding upon their heirs, executors, and administrators of EMPLOYEE, and shall inure to the benefit of the successors and assigns of ORASURE.

IN WITNESS WHEREOF the parties have signed this agreement this __5__ day of ___10___ 20 _20_

_Janean Young_

EMPLOYEE _____

_____

ORASURE TECHNOLOGIES, INC.

Conf Agmt New Emp
KFO: 2/13/07

Confidentiality Agreement New EE  Non Compete.doc

**SCHEDULE A**

**<u>Patentable Inventions</u>**

None, unless listed below:

.

# **EXHIBIT B**

# CONFIDENTIALITY AGREEMENT

AGREEMENT between ORASURE Technologies, Inc. (ORASURE) and _Jody Berry_ ("EMPLOYEE").

In consideration of the employment or continued employment of EMPLOYEE by ORASURE and of salary, wages or other compensation to be paid by ORASURE to EMPLOYEE, it is hereby agreed as follows:

**ORASURE's Area of Interest:**
As used in this agreement, the term "ORASURE's area of interest" shall mean its operations or any field of research, investigative or business in which it or any of its affiliates is actually engaged or is preparing or planning to engage during EMPLOYEE'S employment by ORASURE. Any EMPLOYEE who is in doubt as to the scope of the operations, field of research, investigative or business of ORASURE or its affiliates should consult with the President of ORASURE. ORASURE's present area of interest includes but is not limited to consumer products, clinical diagnostic products, medical devices, and other healthcare products.

**Non-disclosure of Secret or Confidential Ideas or Information:**
EMPLOYEE shall not, either during or after the term of his/her employment by ORASURE, disclose to any person or organization other than ORASURE, or its affiliates, or utilize for the benefit or profit of himself/herself or any other person or organization other than ORASURE or its affiliates any proprietary, secret or confidential idea or information developed by EMPLOYEE for ORASURE or its affiliates or obtained while he/she is in ORASURE's employ from ORASURE, its consultants, vendors, customers or affiliates, except as may be authorized by ORASURE. Included in the foregoing, by way of illustration and not limitation, are such items as research projects, findings or reports, business plans, formulae, methods of manufacture, computer software and related documentation, sales, cost, data pricing or other financial data, employee information or lists of current or prospective suppliers or customers.

**Non-solicitation and Non-Competition:**
EMPLOYEE shall not, either during or for one year after the term of his/her employment by ORASURE,

(a) recruit, solicit, hire, or assist or induce another person or company in recruiting, soliciting or hiring, any executive or employee of ORASURE;

(b) induce or solicit, or assist or induce another person or company in inducing or soliciting, any current or prospective customer, client or supplier/vendor of ORASURE to cease being a customer, client or supplier/vendor of ORASURE, or divert or assist or induce another person or company to divert, ORASURE business away from any customer, client or supplier/vendor of ORASURE; or

(c) own, manage, control, work for or provide services to any entity which competes with ORASURE in ORASURE's area of interest as defined above in the United States (the "Protected Business"); provided, however, that this section (i) shall not prevent EMPLOYEE from accepting a position and working with another entity which competes with ORASURE in the Protected Business, if such entity is diversified and operates through separately identifiable and separately run departments, divisions or other business units, and EMPLOYEE is employed in a

department, division or other business unit that is not engaged in the Protected Business and EMPLOYEE does not, directly or indirectly, provide any assistance, services, advice, consultation or information regarding ORASURE's area of interest to the other entity; and (ii) shall not prevent EMPLOYEE from purchasing or owning less than five percent (5%) of the stock or other securities of any entity, provided that such stock or other securities are traded on any national or regional securities exchange or are actively traded in the over-the-counter market and registered under Section 21(g) of the Securities Exchange Act of 1934, as amended..

**Publishing:**
Except as may be approved by ORASURE, EMPLOYEE shall not

(a)  During the term of his/her employment by ORASURE, submit for publication or publish any
idea or information relating to ORASURE's area of interest; and

(b)  After the term of his/her employment by ORASURE, submit for publication or publish any idea
or information relating to ORASURE's area of interest if such idea or information was developed by EMPLOYEE for ORASURE, or obtained by EMPLOYEE from ORASURE, its consultants, vendors, customers or affiliates, while EMPLOYEE was in ORASURE's employ.

**Outside Employment:**
EMPLOYEE shall not enter or carry on during the term of his/her employment by ORASURE any outside employment, business or other activity for which he/she receives compensation which relates to his/her duties at ORASURE, to his/her profession or to ORASURE's area of interest, which may constitute a conflict of interest, except as may be authorized by ORASURE.

**Material Prepared by EMPLOYEE for ORASURE:**
The following shall be the Property of ORASURE exclusively:

(a)  Any material kept, prepared or received by EMPLOYEE in the course of or **in** order for him/her to perform his/her duties for ORASURE; and

(b)  Any material containing any secret or confidential idea or information, if such idea or information was

(i)  developed by EMPLOYEE for ORASURE or any of its affiliates or

(ii)  obtained while he/she is in ORASURE's employ by EMPLOYEE from ORASURE, its consultants, vendors, customers or affiliates.

Included in the foregoing, by way of illustration and not limitation, are such items as documents, files, computer software, records, correspondence, reports, memorandum, laboratory notebooks, notes, or other papers (including any copy thereof).

**Removal and Return of ORASURE property:**
EMPLOYEE shall not keep elsewhere than on ORASURE premises, nor remove thereof, any property of ORASURE or its affiliates, except and only so long as may be required for the performance of his/her duties for ORASURE.  In the event of termination of his/her employment with ORASURE, EMPLOYEE shall immediately return to ORASURE any property of

ORASURE or its affiliates in his/her possession, under his/her control or removed by him/her from ORASURE's premises.

**Disclosure of Inventions:**

EMPLOYEE shall immediately disclose to ORASURE or its designee and keep adequate records on any invention, discovery, improvement, process product or device, which relates to ORASURE's area of interest and which is conceived, discovered or made by him/her, either solely or jointly with others, during the term of his/her employment by ORASURE. EMPLOYEE shall also immediately disclose to ORASURE or its designee and keep adequate records on any inventions, discovery, improvement, process, product or device, conceived, discovered or made by him/her, either solely or jointly with others, during or after the term of his/her employment by ORASURE, if such inventions, discovery, improvement, process, product or device is based on secret or confidential ideas of information developed by EMPLOYEE for ORASURE or its affiliates or obtained by EMPLOYEE while he/she is in ORASURE's employ from ORASURE, its consultants or affiliates.

**Ownership of Inventions:**

The following shall be the property of ORASURE or its designee exclusively:

(a) Any invention, discovery, improvement, process, product or device, relating to ORASURE's area of interest, conceived, discovered or made by EMPLOYEE solely or jointly with others during the term of his/her employment by ORASURE;

(b) Any invention, discovery, copyright or other proprietary intellectual property right, improvement, process, product or device, conceived, discovered or made by EMPLOYEE solely or jointly with others during or after the term of his/her employment by ORASURE, if such invention, discovery, improvement, process, product or device is based on secret or confidential ideas or information developed by EMPLOYEE for ORASURE or its affiliates or obtained by EMPLOYEE while he/she is in ORASURE's employ from ORASURE, its consultants or affiliates; and

(c) Any patent, patent application or record relating to any such invention, discovery, improvement, process, product or device.

**Secret or Confidential Information of Prior Employers:**

EMPLOYEE shall not disclose to ORASURE or its affiliates any secret or confidential idea or information of a prior employer, except and only as may be authorized by such employer. In case of doubt with respect to his/her obligation towards a prior employer, EMPLOYEE shall consult with the Counsel of ORASURE.

**EMPLOYEE's Own Inventions:**

EMPLOYEE has listed on Schedule A of this agreement all patentable inventions which EMPLOYEE claims are his/her property and which were conceived, discovered or made by him/her solely or jointly or with others prior to his/her employment by ORASURE or its affiliates. The absence of any such listing is a specific representation and agreement by EMPLOYEE that there is no such invention.

**Obtaining and Enforcement of Patents and Assignment of Rights:**

EMPLOYEE shall upon the request of ORASURE either during or after the term of his/her employment by ORASURE do the following:

(a)   Make all lawful oaths and declarations and execute and deliver to ORASURE or its designee any documents which are in the opinion of ORASURE or its counsel necessary to secure or assign to ORASURE or its designee full patent protection in any country or any invention, discovery, improvement, process, product or device which is the property of ORASURE under this agreement; and

(b)   Assist ORASURE or its designee, by testifying or otherwise, in the obtaining or enforcement of any patent relating to any such invention, discovery, improvement, process, product or service.

Necessary expenses in connection with the foregoing, and a fee not to exceed $100 per day if EMPLOYEE is no longer employed by ORASURE shall be borne by ORASURE.

Any obligation of EMPLOYEE to assign rights to ORASURE or its designee under this agreement shall not apply to an invention whether or not within ORASURE's area of interest for which no equipment, supplies, facility or trade secret information of ORASURE was used and which was developed entirely on the EMPLOYEE's own time, unless (a) the invention relates (i) directly to the business of ORASURE or its affiliates, or (ii) to the actual or demonstrably anticipated research or development of ORASURE or its affiliates, or (b) the invention results from any work performed by the EMPLOYEE for ORASURE.

**Agreements with Prior Employers:**

EMPLOYEE shall use his/her best efforts to obtain and furnish ORASURE with copies of all written agreements entered into by him/her with prior employers either relating to inventions or secret or confidential ideas or information, or in any way restricting or otherwise relating to EMPLOYEE's employment by ORASURE, unless EMPLOYEE is under obligation not to disclose the contents of any such agreement. EMPLOYEE has listed on Schedule B of this agreement all prior employers with whom such agreements have been made.

**Miscellaneous Provisions:**

(a)   Any failure on the part of ORASURE to insist upon the performance of this agreement, or any part thereof, shall not constitute a waiver of any right under this agreement.

(b)   In the event any provision, or any portion of any provision, of this agreement should be declared invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or portion thereof shall be considered separate and apart from the remainder of this agreement, which shall remain in full force and effect.

(c)   This agreement shall be construed according to the laws of the Commonwealth of Pennsylvania, without regards to Pennsylvania conflicts of laws principles; any dispute between EMPLOYEE and ORASURE may be brought only in the state or federal courts in Pennsylvania and the parties hereby consent to the exclusive jurisdiction of those courts.

(d)   All captions herein are for convenience only, and shall not be interpreted as having any meaning or significance.

(e)   This agreement may not be assigned by EMPLOYEE. Subject to the foregoing, this agreement shall be binding upon their heirs, executors, and administrators of EMPLOYEE, and shall inure to the benefit of the successors and assigns of ORASURE.

IN WITNESS WHEREOF the parties have signed this agreement this _06_ day of _Feb_ 20_18_

_____
EMPLOYEE

_____
ORASURE TECHNOLOGIES, INC.

Conf Agmt New Emp
KFO: 2/13/07

Confidentiality Agreement New EE  Non Compete.doc

**SCHEDULE A**

**<u>Patentable Inventions</u>**

None, unless listed below:

**SCHEDULE B**

**Agreements with Prior Employers**

None, unless listed below:

## VERIFICATION

I, Kathleen Weber, verify that I am employed by Plaintiff OraSure Technologies, Inc., as its Chief Product Officer; that I am authorized to make this verification on behalf of Plaintiff OraSure Technologies, Inc.'s behalf; that I have read the foregoing Complaint; and that the allegations in the Complaint are true and correct to the best of my knowledge.

I declare, under penalty of perjury, that the foregoing is true and correct.

Date: ____November 14____, 2024

_____
Kathleen Weber

DMS_US.367573717.1